STATE, Respondent v. COCHRANE, Appellant

(173 N.W.2d 495)

(File No. 10616. Opinion filed January 14, 1970)

**Loucks, Oviatt, Bradshaw & Green,** Watertown, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Thomas R. Vickerman,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

HOMEYER, Judge.

The defendant, David Loren Cochrane, was convicted of stealing a 1966 Chevrolet automobile and sentenced to a term of three years in the state penitentiary. He appeals from the judgment of conviction asserting several errors. The only one

which needs consideration pertains to a claimed unlawful search and seizure.

Before trial the defendant made timely motion to suppress certain evidence seized pursuant to a search warrant. The warrant was issued upon the affidavit of the chief of police of the City of Brookings and the property to be searched for was described as a "1966 Chevrolet Motor No. F 0914EA, Transmission No. P 0922 and any tools and equipment which may have been used in removing same from (a) stolen vehicle" described as a 1966 Chevrolet Chevelle Malibu. The premises to be searched were described as the garage at 1212 1st Street in Brookings and any motor vehicle therein "specifically a 1960 Chevrolet". It directs the searching officer to bring the property described if found forthwith to "the City Hall in the City of Brookings, S. D."

The concluding paragraph of the search warrant reads: "Witness the Hon. P. H. Collins Presiding Judge and the seal of said Municipal Court this 30th day of September A.D. 1966—Ruth E. Kneip, Clerk of Courts." All parts of such paragraph except the signature of Ruth E. Kneip are either part of a printed form or were inserted with a typewriter. The seal of the Municipal Court is attached. The signature of the Municipal Judge does not appear on the face of the warrant. Included in the inventory of property taken under the warrant appearing on the back side are "1-Distributor cap (broken) found in back seat of 1960 chevrolet 8 wires," and two pair of side cutters separately described. The chief of police signed and swore to a "Proof of Inventory" also on the back side, before P. H. Collins, Judge, on October 3, 1966.

The motion to suppress set forth as grounds that it was insufficient on its face and did not comply with the federal constitution and our statute, SDC 34.11,[1] now SDCL 1967, Ch. 23-15, and also attacked the sufficiency of the affidavit which was the basis for the search warrant. The motion to suppress was denied.

---

1. From the record before us which includes the judge's memorandum decision, it appears defendant's counsel did not argue the failure of the magistrate to sign the search warrant before the trial judge and no mention of it is made in his memorandum.

At the trial, over defendant's objection that such evidence was the product of an unlawful search and seizure, the court received into evidence Exhibit 3, a pair of diagonal or side-cutting pliers, and Exhibit 4, a broken distributor cap, which the chief of police had seized under the search warrant described supra. A special agent with the Federal Bureau of Investigation assigned to its crime laboratory gave an opinion that through microscopic examination he had determined that Exhibit 2, which was a piece of copper tubing taken from the chassis of the stolen vehicle when found with the motor missing, had been marked by the pliers, Exhibit 3. He also testified that Exhibit 5,[2] which was a broken part of a distributor cap, fitted into and completed Exhibit 4. These exhibits were strong evidence circumstantially linking the defendant with the theft. There is no doubt but that this evidence was prejudicial if erroneously admitted. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

■■ A private residence and the curtilage thereof may not be searched by an officer without a valid search warrant unless the search is incidental to a lawful arrest of the occupant or with the consent of such occupant. State v. Merrill, 82 S.D. 609, 152 N.W.2d 349. The garage of defendant was a part of his residence and legally within its curtilage. State v. Manning, N.D., 134 N.W.2d 91.

■■ The issuance of a search warrant is a judicial act and must be performed by a neutral and detached magistrate acting in a judicial capacity. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Generally statutes authorizing and regulating searches and seizures and the issuance of search warrants are strictly construed against the state and liberally in favor of the individual. State v. Lane, 76 S.D. 544, 82 N.W.2d 286; State of Ohio v. Vuin, Ohio Com.Pl., 185 N.E.2d 506, 89 Ohio

---

2. Exhibit 5 was found by investigating officers in a work shop on a farm about 15 miles from Brookings where defendant and two companions left a motor, transmission, tools, and some other automotive parts during the night of September 21, 1966, the date the motor vehicle was stolen. Defendant removed the motor and some other items to his home on September 24, 1966.

Law Abst. 193; Commonwealth v. Monosson, 351 Mass. 327, 221 N.E.2d 220; 79 C.J.S. Searches and Seizures § 7, p. 785.

▮ In this state the form of a search warrant is prescribed by statute, SDCL 1967 23-15-10, and in the definition thereof, SDCL 1967 23-15-1, and in directing its contents, SDCL 1967 23-15-9, the legislature required that it be signed by the issuing magistrate. There is no exception. The following persons are designated as magistrates by statute, SDCL 1967 23-21-4: Judges of the supreme court; circuit court, county district court, municipal court, county and township justices of the peace, and city and town police magistrates.

▮ Since the search warrant was not signed by the municipal judge, it is our opinion that it was void on its face and any search and seizure made thereunder was unauthorized and illegal. A judgment is void on its face when it only requires an inspection of the judgment roll to demonstrate its invalidity. Anderson v. Lynch, 94 Okl. 137, 221 P. 415; Spaulding & Co. v. Chapin, 37 Cal.App. 573, 174 P. 334. The same is true of a search warrant when it shows on its face that it lacks the signature of a magistrate vested by statute with power to issue the same. See Miller v. Commonwealth, 201 Ky. 423, 257 S.W. 3; Wilson v. Commonwealth, 211 Ky. 709, 277 S.W. 1019; Divine v. Commonwealth, 236 Ky. 579, 33 S.W.2d 627; Turner v. Commonwealth, Ky., 328 S.W.2d 413; Byrd v. Commonwealth, Ky., 261 S.W.2d 437.

In Byrd the Kentucky court commenting on their state constitution which is essentially similar to ours, Article VI, § 11, said:

"Courts never regard lightly the extraordinary and unusual procedure authorized by search warrants and are ever mindful of the constitutional guarantee to citizens to be free from unreasonable search and seizure. * * * The Miller and Divine opinions (cited above) point out the difference between a private individual and a judicial officer authorizing another to sign

his name, and how wide the door for fraud could swing open if a judicial officer were allowed to delegate to another the right to sign his name to legal documents. When we consider the constitutional guarantee to citizens to be free from unreasonable search and seizure, along with the fraud which might be perpetrated against this right if a judge could authorize another to sign his name to a search warrant, even in the presence of the judge, we have no doubt of the soundness of the Miller and the Divine opinions * * *".

The state relied entirely on a valid search warrant and neither at the hearing on the motion to suppress nor at the trial did it attempt to justify the use of this evidence on the theory that the search and seizure was made with the consent of the defendant. Nevertheless, since at oral argument some reference was made to this aspect of the law we will consider it briefly.

The crime was alleged to have been committed on September 21, 1966. The record shows that on September 27, 1966, the sheriff of Brookings County signed a complaint charging the defendant with the crime of receiving stolen property (wool) alleged to have occurred on May 13, 1965. Defendant was arrested on a warrant for that charge shortly after the noon hour on September 30, 1966. Almost immediately after his arrest and while in police custody[3] defendant, the chief of police, and some other police officers went to defendant's home and he obtained a key to the garage and permitted the officers to enter the garage.

While in the garage, the chief of police saw a Chevrolet engine, newly painted, partially attached to a 1960 Chevrolet chassis. Upon scraping off the paint the officer noted the motor number had been ground or filed off. Nothing was seized at that time and no one remained on the premises. Subsequently

---

3. The chief of police in an affidavit presented at the hearing on the motion to suppress set forth that while in police custody under arrest, he told defendant they were in the process of getting a search warrant.

that afternoon, the chief of police obtained the search warrant alleging as probable cause for its issuance what he observed in the garage. The return of the sheriff on the search warrant shows the search was started at 5:25 p. m. on September 30th. The defendant was not present during such search.

 The constitutional right of an individual to be secure in person and effects from an unreasonable search and seizure may be waived provided it is done voluntarily. A distinction is recognized between submission to apparent authority of an officer acting under a warrant and unqualified consent. 47 Am.Jur., Searches and Seizures, § 71. Whether consent is freely given is a question of fact. People v. Gorg, 45 Cal.2d 776, 291 P.2d 469. The intent to waive the constitutional immunity must be positively established and the burden of proof is upon the party alleging the waiver. 79 C.J.S. Searches and Seizures § 62.

Where no search warrant was used and the police officer making the search purported to act upon a consent claimed to have been given, the court in People v. Gorg, supra, said "it is doubtful whether the officer was justified in concluding that defendant had freely consented to the search of his room or whether such consent, if given, included consent to repeated searches * * *. Thus, if that issue were crucial it is doubtful whether the People sustained their burden of proving that defendant freely consented to the searches of his room." We express the same opinion. See also People v. Hickins, 165 Cal.App. 2d 364, 331 P.2d 796; State of Maine v. Brochu, Me., 237 A.2d 418; State of Maine v. Chapman, Me., 250 A.2d 203.

 Upon the record before us and under the circumstances of this case, we cannot sustain the validity of the search and seizure on the basis that the defendant voluntarily consented to a second search.

The judgment is reversed and the cause remanded for a new trial.

All the Judges concur.